# NATIONAL FINANCE COMPANY v. J. F. CRAMER.[1]

June 8, 1923.

No. 23,441.

**Contract of corporation for hauling gravel ultra vires.**

1. A corporation authorized to deal in lands, bonds, mortgages, notes and stocks, and all kinds of personal property, to loan money and purchase and rediscount paper, to act as agent or broker in the buying and selling of real and personal property, and to deal in insurance as agent or broker, with general power to do whatever is proper and necessary to carry out its specifically granted powers, is not authorized to engage in contracting for hauling with auto trucks gravel used in the construction of a road under construction by the state, although it is the owner of some auto trucks which would be used in such work.

**Other party not liable for breach of contract while executory.**

2. The defendant who entered into such a contract with the plaintiff, and repudiated it while it was wholly executory, is not liable in damages for its breach.

Action in the district court for Hennepin county to recover $22,633 for breach of contract. The case came on for trial before Michael, J., whereupon defendant objected to the introduction of any testimony, the objection was sustained and defendant's motion for judgment on the pleadings was granted. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*Selover, Schultz & Mansfield,* for appellant.

*Arthur A. Stewart,* for respondent.

DIBELL, J.

Action to recover for the breach of a contract by the defendant for whom plaintiff was to haul gravel. There was judgment on the pleadings for the defendant. The plaintiff appeals from the judgment.

1. The plaintiff is a Minnesota corporation. The character of the business authorized by its articles is as follows:

[1]Reported in 194 N. W. 108.

"The general character of its business shall be:

"To buy, improve, lease, sell and deal in lands, tenements and hereditaments.

"To buy, sell and deal in bonds, mortgages, promissory notes, stocks of other corporations or companies, and any and all kinds of personal property whatsoever.

"To loan money and purchase and rediscount commercial paper of other kinds and character.

"To act as agent, factor or broker in the handling, buying, and selling of both real and personal property.

"To act as agent, factor and broker in the handling of, and to buy and sell insurance, or insurance contracts of any and all kinds, varieties and descriptions.

"And to do any and everything proper and necessary in order to carry out the above purposes."

In July, 1921, the plaintiff entered into a contract for hauling gravel for the defendant, who had a contract for work on a state road. The work which the plaintiff contracted to do required the use of from 20 to 24 auto trucks, and skilled drivers to operate them, for 2½ months. The agreed price for the work was in excess of $60,-000. The defendant repudiated the contract while it was wholly executory, and this suit for damages followed. The complaint alleges that "the plaintiff was the owner of or could and would have obtained said number of trucks  *  *  * and had in its employ or could and would have employed the requisite number of proper and skilled drivers," to carry out the contract.

In its reply answering the charge that the contract was ultra vires, the plaintiff alleged

"That in the course of its business it became the owner of a large number of trucks suitable for hauling gravel and cement, and that it became necessary and incidental to the business of the plaintiff, by reason of the fact that it was the owner of such trucks, to engage in the business of selling said trucks and in keeping said trucks em-

ployed, and in the employment of men, to manage and control said trucks; and that in said business it is necessary, incidental and customary to keep the trucks owned by the plaintiff employed in hauling sand, gravel and cement until the sale and delivery of said trucks. That in said business it is necessary, incidental and customary, in the selling of said trucks to find for the purchaser employment for the truck purchased by him, and to use all reasonable efforts to furnish said purchaser with steady employment; and that for the purpose of keeping said trucks employed pending the sale and delivery of the same, and for the purpose of inducing customers to purchase said trucks, by giving them an opportunity for steady employment, it is necessary and incidental to the business of the plaintiff to enter into contract for the hauling of sand, gravel and cement, such as the contract set out in the complaint herein."

The plaintiff relies for its corporate power to enter into the contract upon the specific authority granted by the second paragraph of its articles quoted above, that is, to deal in "any and all kinds of personal property whatsoever," together with the general power granted by the closing paragraph to do whatever is proper and necessary to carry out its specifically mentioned purposes.

Engaging in the contracting business to the extent contemplated, with perhaps the purchase of necessary additional equipment, was not within the purposes of the plaintiff corporation as outlined in its articles; nor was it incidental to its authorized powers. We do not say that a company, organized as is the plaintiff, finding itself the owner of trucks, might not use them temporarily to make its ownership of value. Such an exceptional situation is not presented by the complaint. The reply suggests the necessity of acquiring additional equipment and the engaging of additional skilled employes. The quoted allegations of the reply do not, as we view them, authorize as incidental to the sale of the trucks on hand the engaging in so extensive a contract. What it proposed doing under the contract is what it alleges it is doing, though perhaps on a smaller scale, in the first paragraph of the complaint. It is there alleged that its business is the engaging "in the ownership and

operation of a large number of trucks suitable for hauling gravel and cement and in the employment of men to manage and control said trucks, and in contracting for such hauling in the state of Minnesota and elsewhere."

The contract here involved is not a contract made in an emergency to protect the value of the plaintiff's property, but indicates a more or less continuous business, of considerable magnitude, in which it is engaging for profit. It was really engaged, as the first paragraph alleges, in the contracting business in hauling gravel and cement in Minnesota and elsewhere. The trial court very clearly summed up the situation in this way:

"It is altogether likely that engaging in this business under the circumstances may have been a convenience, but I do not think it is incidental to the main powers granted to this corporation. They would have a right, if they acquired these trucks in the course of legitimate business to dispose of them, but to say that they may launch out into the general contracting business in using those trucks is quite a different affair and is not a selling affair; it is engaging in another line of business wholly foreign."

The general principles controlling are not in doubt. 1 Dunnell, Minn. Dig. §§ 2024-2026, and cases cited. Often there is difficulty of application, but we find no trouble here in holding that the contract involved was not within the specific powers of the corporation or incidental to them.

2. The remaining question is whether, taking the contract as ultra vires, the plaintiff may still recover for a breach of it. The defense of ultra vires when interposed by either the corporation or the other contracting party to avoid the effect of an executed contract is an ungracious one not much tolerated nor often successful. Here the contract was wholly executory. It was repudiated within a few days after the agreement upon its terms. The plaintiff cannot recover for its repudiation. 1 Dunnell, Minn. Dig. § 2026, and cases.

Judgment affirmed.